**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONICA ARROYO, | No.  2:22-CV-00360-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 8 (minute order reassigning case to Magistrate Judge). Pending before the Court are the parties' briefs on the merits, ECF Nos. 10 and 11.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

# I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

| | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

/ / /

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 18, 2019.  See CAR 15.[1] In the application, Plaintiff claims disability began on November 19, 2019.  See id.  Plaintiff's claim was initially denied on March 24, 2020.  See id.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on February 11, 2021, before Administrative Law Judge (ALJ) Sara A. Gillis.  See id.  In an April 22, 2021, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): migraines, lumbar degenerative disk disease, depressive disorder, anxiety disorder, and obesity;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps or stairs; she can occasionally stoop and crouch; she can frequently kneel and crawl; she can never work with heights or dangerous machinery; she should avoid concentrated exposure to extreme heat and fumes; she should avoid noisy work environments but can work in moderate noise, such as grocery store or office setting; she can understand, remember, and apply simple job instructions; she can maintain concentration, persistence, and pace for simple, repetitive job tasks, that do not involve teamwork with co-workers; and she can have occasional interactions with her co-workers and the general public;
>
> 4. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 18-26.

After the Appeals Council declined review on January 10, 2022, this appeal followed. See id. at  1-5.

/ / /

/ / /

/ / /

_____

[1]     Citations are to the Certified Administrative Record (CAR) lodged on July 5, 2022, ECF No. 9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate Plaintiff's subjective statements and testimony; and (2) the ALJ failed to properly evaluate the medical opinion of Janet O'Brien, M.D.  See ECF No. 10, pg. 12.  Plaintiff also argues that remand is necessary so the ALJ can consider and evaluate a March 30, 2021, neuropsychological assessment and medical opinion prepared by Virginia Dinut, Psy.D. See id.

As addressed below, the Court remands the matter for further administrative proceedings with respect to Dr. O'Brien's report and opinion, denies Plaintiff's request for remand as to Dr. Dinut's opinion, and declines to make a finding as to whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective testimony. Quesada v. Comm'r of Soc. Sec., No. 1:20-CV-01674-SAB, 2022 WL 9452327, at *9 (E.D. Cal. Oct. 14, 2022) (remanding matter for further administrative proceedings and declining to make a determination as to plaintiff's other contentions).

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

### A.  Procedural Standards

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). Where the acceptable medical source opinion is based on an examination, the "physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an

1    acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24

2    (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical

3    sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources"

4    such as nurse practitioners, physician assistants, and social workers may be discounted provided

5    the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d

6    901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting

7    20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may

8    be considered acceptable medical opinions).

9          The Commissioner has promulgated revised regulations concerning how ALJs

10    must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20

11    C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the

12    treating physician rule which established a hierarchy of weight to be given medical opinions

13    depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal.

14    Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or

15    manifestly contrary to statute, (2) the prior judicial construction was not mandated by the

16    governing statutory language to the exclusion of a differing agency interpretation, and (3) the

17    [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017

18    regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required

19    to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions

20    from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr.

21    30, 2021).

22          Under the revised regulations, the ALJ must evaluate opinions and prior

23    administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of

24    Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).

25    In determining how persuasive the opinion of a medical source is, an ALJ must consider the

26    following factors:  supportability, consistency, treatment relationship, specialization, and "other

27    factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a

28    requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies.

1    See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

2          Specifically, in all cases the ALJ must at least "explain how [she] considered the

3    supportability and consistency factors," as they are "the most important factors." See Buethe,

4    2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state:

5    "[t]he more relevant the objective medical evidence and supporting explanations presented by a

6    medical source are to support his or her medical opinion(s) or prior administrative medical

7    finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4

8    (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

9    medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

10   medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'"

11   Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate

12   findings on the remaining factors (relationship with claimant, specialization, and 'other') only

13   when 'two or more medical opinions or prior administrative medical findings about the same

14   issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the

15   record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

16       **B.    Dr. O'Brien**

17          The ALJ considered both the consultative medical evaluation and medical opinion

18   of Dr. O'Brien in deciding whether Plaintiff was entitled to benefits.  CAR 22-23.  Dr. O'Brien

19   evaluated Plaintiff on March 14, 2020, with respect to Plaintiff's chief complaints of scoliosis and

20   arthritis in the spine, low back pain, headaches, fibromyalgia, and irritable bowel syndrome.

21   CAR 22.  The ALJ found that:

22          Positive findings from the physical examination included: positive
             Waddell's signs[2] with superficial tenderness in lumber sacral area, and
23          gluteal area. The claimant exhibited a normal lumbar lordosis and thoracic
             kyphosis with no evidence of scoliosis. Dr. O'Brien also noted the
24          claimant walked without difficulty or abnormal gait and without use of an
             assistive device (Exhibit 3F, p. 5). The claimant also demonstrated a
25          normal range of motion in her cervical and dorsolumbar spine. Based on
             the examination, Dr. O'Brien diagnosed the claimant with low back pain
26

27          2 "Waddell's signs" indicate the presence of non-anatomic pain. Migliore v. Colvin, No.
     EDCV 12-00251-AJW, 2013 WL 3935879, at *3 & n.1 (C.D. Cal. July 29, 2013) (noting findings
28   of positive Waddell's signs and symptom magnification suggests malingering).

1   without radiculopathy, headaches with some symptoms consistent with
    migraine headaches, fibromyalgia by history, and obesity.

2
    CAR 22.

3

4          However, in considering Dr. O'Brien's medical opinion, the ALJ found it

5   unpersuasive because the opinion conflicted with Dr. O'Brien's own evaluation of Plaintiff. CAR

6   22-23.  The ALJ provided the following reasoning:

7          The undersigned has read and considered Dr. O'Brien's opinion and finds
           her assessment less persuasive (Exhibit 3F). Dr. O'Brien opined the
8          claimant has the following limitations: she can stand and walk up to 2
           hours in an 8-hour workday; she can sit 6 hours in an 8-hour workday; she
9          can lift and carry 20 pounds occasionally; and she can stoop, crouch,
           kneel, and climb less than 2 hours in an 8-hour workday. Dr. O'Brien did
10         not note any significant positive findings yet assessed the claimant with
           significant exertional limitations. For example, Dr. O'Brien noted the
11         claimant walked without difficulty and without the use of an assistive
           device, yet opined the claimant could stand and/or walk up to 2 hours in
12         an 8-hour workday. Dr. O'Brien also noted the claimant demonstrated a
           normal range of motion in her cervical and dorsolumbar spine, yet noted
13         the claimant had significant limitations in crouching, stooping, and
           kneeling. Dr. O'Brien opined functional limitations that are more
14         restrictive than the objective medical evidence in the record and even in
           his own examination findings. As such, the undersigned finds Dr.
15         O'Brien's assessment less persuasive.

16         CAR 22-23.

17         Plaintiff maintains that the ALJ improperly discounted the examining medical

18  source opinion of Dr. O'Brien, citing Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022), for the

19  proposition that "an ALJ cannot reject an examining or treating doctor's opinion as unsupported

20  or inconsistent without providing an explanation supported by substantial evidence." See ECF

21  No. 10, pg. 18.  It appears Plaintiff bases her entire argument, here, solely on the issue of

22  Plaintiff's obesity and that "the ALJ's explanation for discounting Dr. O'Brien's opinion was not

23  valid or supported by substantial evidence." Id., pgs. 18-20.  According to Plaintiff, "it does not

24  appear that the ALJ considered Plaintiff's obesity and how evidence of that obesity supported Dr.

25  O'Brien's opinion." Id., pg. 20.

26         Plaintiff claims that the ALJ found Dr. O'Brien's opinion to be "inconsistent with

27  the lack of positive findings recorded during her examination of Plaintiff (Tr. 22-23)"; however,

28  Dr. O'Brien "clearly explained that he based his assessment of standing/walking and postural

1   limitations on Plaintiff's obesity (Tr. 575)." <u>Id.</u>, pg. 19. During the examination, Dr. O'Brien

2   noted "Plaintiff had a body mass index (BMI) of 34.8 (Tr. 570)" and diagnosed Plaintiff with

3   "obesity and low back pain (Tr. 574)." <u>Id.</u>, pg. 18. As a result, Dr. O'Brien "limited Plaintiff to 2

4   hours of standing and walking in an 8-hour workday due to her obesity (Tr. 575)" and limited

5   Plaintiff to "stooping, crouching, kneeling, and climbing less than 2 hours in an 8-hour workday

6   due to her obesity (Tr. 575)." <u>Id.</u> Plaintiff suggests that "although Plaintiff's obesity would not

7   necessarily manifest in gait abnormalities during a short examination, the combined impact of her

8   obesity and back pain would result in limitations in her ability to stand/walk and perform postural

9   limitations over an extended period of time." <u>Id.</u> Plaintiff requests that the matter be remanded

10  for further consideration of Dr. O'Brien's opinion. <u>See id.</u>, pg. 20.

11          Defendant claims Dr. O'Brien's opinion was not persuasive because it was not

12  supported by, or consistent with, objective medical evidence in the record[3] regarding Plaintiff's

13  physical impairments; thus, it was appropriately discounted by the ALJ. <u>See</u> ECF NO. 11, pgs. 9-

14  12. Defendant argues that Dr. O'Brien's opinion was not supported by his own observations. Dr.

15  O'Brien found that:

16          Plaintiff was not in acute distress, she was casually dressed with groomed
            hair, hygiene was intact, she moved briskly and gestured freely, was very
17          cooperative, drove herself to the examination, and she did not exhibit any
            guarding movements or difficult walking, sitting, or getting onto the
18          examination table (AR 569). Her lumbar and thoracic spines were normal
            with no evidence of scoliosis, posture was normal, extremities were
19          normal including muscle bulk and tone, and she had normal coordination
            and gait (AR 570). Plaintiff had some abnormal findings related to range
20          of motion, but had grip strength in excess of fifty pounds with both hands,
            and normal strength in all extremities (AR 572-73). A straight leg raising
21          test (for disc herniation) was equivocal (AR 573). Reflexes were absent,
            though sensation was intact to light touch (AR 573). Plaintiff had two
22          tender points of 36 tested (AR 574).

23          <u>Id.</u>, pgs. 9-10.

24          Additionally, Dr. O'Brien found that Plaintiff's physical examination "did not

25  support a diagnosis of fibromyalgia, nor was it clear that her symptoms supported the diagnosis

26  (AR 574)" and diagnosed Plaintiff with "low back pain without evidence of radiculopathy (AR

27  _____

28          [3] According to Defendant, Dr. O'Brien did not review any of Plaintiff's medical records.
            <u>See</u> ECF No. 11, pg. 9 (citing AR 567-68).

1  574).” Id., pg. 10.  However, despite the above, and based on nothing more than Plaintiff's chief

2  complaints, reported history, and Dr. O'Brien's observations at the time—Dr. O'Brien opined

3  that Plaintiff had significant physical limitations.  See id., pgs. 9-10.  Defendant argues, because

4  Dr. O'Brien's opinion was not supported by evidence or observations, the supportability factor

5  was not satisfied and so the ALJ properly discounted Dr. O'Brien's opinion. See id., pg. 11.

6          Defendant also argues that the ALJ found Dr. O'Brien's opinion to be inconsistent

7  with not only his own objective examination, but also medical evidence in the record.  See id.,

8  pgs. 11-12.  Defendant notes that there was substantial evidence in the record to support the

9  ALJ's conclusion that Dr. O'Brien's report was inconsistent with the objective medical evidence,

10  such as "the record documented normal gait (AR 41, 390, 401, 410, 418, 424, 429, 437, 442, 444,

11  447, 488, 490, 497, 503, 669)" and "normal strength (AR 40 ["Mrs. Arroyo reported no

12  significant difficulties with strength and coordination at this time"], 444)." Id., pg. 12. Further,

13  Defendant argues that two separate doctors reviewed Dr. O'Brien's opinion, compared it against

14  the record, and found it inconsistent with other evidence. See id.  Defendant contends that, while

15  the ALJ determined that "Plaintiff was more restricted than either Dr. Trias or Dr. Amado found

16  (by restricting her to light work), their rejection of Dr. O'Brien's opinion remained relevant." Id.

17  Defendant provides that:

18          [T]he State agency doctor who reviewed Plaintiff's records and Dr.
          O'Brien's opinion at the initial stage of Plaintiffs claim concluded that Dr.
19          O'Brien's opinion was overly restrictive (AR 82-83 [E. Trias, M.D.,
          concluding in March 2020 that the "[Consultative Examiner's Medical
20          Source Statement] was overly restrictive," and instead Plaintiff could
          perform medium work with postural limitations]). Similarly, the State
21          agency doctor who reviewed the records at the reconsideration stage
          justified a modified medium exertional RFC in part by explaining that
22          Plaintiff's physical examinations were "unremarkable" and that there was
          insufficient documentation of trigger points for fibromyalgia syndrome
23          (AR 97-98 [M. Amado, M.D.]).

24          Id.

25          Finally, with respect to Dr. O'Brien's opinion regarding obesity, Plaintiff argues

26  that the ALJ did not take Dr. O'Brien's conclusions regarding Plaintiff's obesity into account.

27  Plaintiff argues Dr. O'Brien's opinion was based on "standing, walking, and [the] postural

28  limitations on Plaintiff's obesity" and speculates that these movements would manifest over an

1   extended time. Id., pg. 12.  Defendant asserts that the ALJ found that Plaintiff's obesity "was a

2   severe impairment, and analyzed obesity in terms of its potential to cause or contribute to other

3   impairments (AR 17-19, citing SSR 19-2p)" and that Plaintiff neither contests the ALJ's

4   reasoning on these issues nor presents any persuasive evidence that obesity would only cause

5   functional deficits over an extended time period.  Id.

6          The Court finds that the ALJ's findings as to the consistency factor is not

7   supported by substantial evidence in the decision; thus, the ALJ does not satisfy the requirements

8   of the 2017 regulations.

9          Supportability and consistency are the most important factors, and the ALJ is

10  required to explain how both factors were considered for each medical source.  The regulations

11  are clear and imperative in defining the mode of analysis.  See 20 C.F.R. § 404.1520c(b)(2) ("we

12  will explain how we considered the supportability and consistency factors for a medical source's

13  medical opinions or prior administrative medical findings in your determination or decision");

14  Woods, 32 F.4th at 792 (finding agency must explain how the supportability and consistency

15  factors were considered in reaching the decision); E.S. v. Kijakazi, No. 20-CV-06550-JCS, 2022

16  WL 4292333, at *12 (N.D. Cal. Sept. 16, 2022) (noting ALJ blurred analysis of supportability

17  and consistency factors and failed to articulate which evidence supported the findings regarding

18  each factor; "such conflation of the supportability and consistency factors rendered the ALJ's

19  analysis insufficient under the revised articulation requirements"); Sam-Chankhiao v. Kijakazi,

20  No. 2:20-CV-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (finding ALJ's vague

21  and conclusory discussion of doctor's medical opinion failed to discuss the necessary factors of

22  supportability and consistency); Carrie D. v. Kijakazi, No. 1:20-CV-03227-LRS, 2022 WL

23  2901010, at *6 (E.D. Wash. June 6, 2022) (finding ALJ supported her findings only with general

24  statement that record "contains generally normal interactive findings such as normal speech and

25  affect" and that doctor's own records failed to support limitations –but provided no citation to the

26  record in support of ALJ's statements, which is an insufficient explanation under Woods"); Hardy

27  v. Comm'r of Soc. Sec., 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative

28  adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail

1   how the factors actually were applied in each case, to each medical source.").

2           Here, it appears the ALJ has blurred the requirements of supportability and

3   consistency, which is insufficient under the regulations.  Woods, 32 F.4th at 793 n.4 (noting that

4   "to avoid confusion" ALJs should "endeavor to use these two terms of art—"consistent" and

5   "supported"—with precision").  The ALJ's discussion of Dr. O'Brien's report and opinion

6   consists of two short paragraphs:  first, a brief and partial description of Dr. O'Brien's

7   examination results, and second, why the ALJ found Dr. O'Brien's opinion less persuasive.[4]  The

8   ALJ concludes Dr. O'Brien's report to be "less persuasive" based on the fact that Dr. O'Brien did

9   not note significant positive findings with respect to Plaintiff's physical impairments during his

10  evaluation and found that Plaintiff exhibited positive Waddell's signs with superficial tenderness

11  in lumber sacral area, and gluteal area; yet, despite no observations of functional limitations, Dr.

12  O'Brien assessed Plaintiff with significant exertional limitations more restrictive than his own

13  examination warranted.

14          As to the supportability factor, the ALJ's finding that Dr. O'Brien's opinion was

15  less persuasive because it was contradictory with his own examination findings is supported by

16  substantial evidence—Dr. O'Brien's own examination and report.  In rendering his opinion, Dr.

17  O'Brien provided no explanation to substantiate his opinion that Plaintiff had significant

18  functional limitations, especially in light of the fact that the opinion was contrary to what the

19  examination revealed.  The Court agrees with the ALJ that Dr. O'Brien's lack of support for the

20  Doctor's own conclusions cuts against supportability.

21          However, as to the consistency factor, the ALJ errored because she failed to

22  explain how Dr. O'Brien's report and opinion are inconsistent with *other* objective medical

23  evidence in the record.[5]  The ALJ simply states that "Dr. O'Brien opined functional limitations

24

25          [4] The ALJ fails to use the words "supportability" or "consistency" in the decision as they
    pertain to Dr. O'Brien.

26          [5] To the extent the ALJ identified relevant citations elsewhere in the decision, the Court
    will not attempt to identify those citations in order to find that both factors are supported by

27  substantial evidence.  See Quesada 2022 WL 9452327, at *8; see also Hardy, 554 F. Supp. 3d

28  at 909 ("It is not the role of a reviewing court to comb the record and imagine manifold ways in
    which the factors could have been applied to the evidence that was presented.").

that are more restrictive than the objective medical evidence in the record and even in his own examination findings," but does not explain how, or elaborate as to what objective medical evidence in the record undermines Dr. O'Brien's opinion.  See Rodin v. Comm'r of Social Security, No. 1:21-CV-00900-SAB, 2023 WL 3293423, at *11 (E.D. Cal. May 5, 2023) (remarking ALJ could more clearly explain reasoning as guided by applicable regulation terms). Here, the ALJ neither compares Dr. O'Brien's report and opinion with any other medical evidence in record nor cites to any other evidence in the record bridging Dr. O'Brien's report and the medical evidence in the record with the ALJ's conclusion.  See id., at *20 (finding, despite ALJ not specifically addressing factors of supportability and consistency in decision, as required, consistency factor satisfied because at various points in decision, ALJ noted doctor's findings in relation to others and "compared various notes" from doctors with other evidence in the record). While Defendant attempts to right the ship by providing the missing connection between Dr. O'Brien's opinion and the medical evidence in the record, it is the ALJ's duty under the regulations to do so in support of her finding that Dr. O'Brien's opinion was less persuasive.

The ALJ must explain how she considered each factor when reaching her findings; as a result, the vague and conclusory discussion of Dr. O'Brien's opinion fails with respect to the consistency factor.  Pelligrini v. Kijakazi, No. 2:21-CV-2312 DB, 2023 WL 2480753, at *5 (E.D. Cal. Mar. 13, 2023) ("significant gaps exist in the ALJ's discussion of [doctor's] medical opinion that leave this court unable to build a 'logic bridge' between the evidence and his finding") (citing Cooley v. Comm'r of Social Security, 587 F.Supp.3d 489, 500 (S.D. Miss. 2021)).  Accordingly, the Court finds the ALJ erred in weighing Dr. O'Brien's opinions because the ALJ did not sufficiently explain the consistency factor, as required under the regulations and Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022).

The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d

13

1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)).  Generally, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) ("The failure to make adequate findings . . . at least necessitate[s] a remand for a redetermination of fault.").  "The decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

In this instance, remand is appropriate in order to remedy defects in the ALJ's decision with respect to her consideration of Dr. O'Brien's report and opinion. Therefore, the Court orders this action remanded for further administrative proceedings consistent with this opinion, and to further develop the record as deemed necessary.

## C.   **Dr. Dinut**

Plaintiff argues that the matter should be remanded so that the ALJ may consider the neuropsychological evaluation report prepared by Virginica Dinut, Psy.D., dated March 30, 2021.  See ECF No. 10, pg. 20.  The Court disagrees.  A case may be remanded to the agency for the consideration of new evidence if the evidence is material and good cause exists for the absence of the evidence from the prior record.  See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (citing 42 U.S.C. § 405(g)).  Both requirements must be satisfied.  See id.

In order for new evidence to be "material," the court must find that, had the agency considered this evidence, the decision might have been different.  See Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990).  The court need only find a reasonable possibility that the new evidence would have changed the outcome of the case.  See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The new evidence, however, must be probative of the claimant's condition as it existed at or before the time of the disability hearing.

See <u>Sanchez</u> 812 F.2d at 511.  In <u>Sanchez</u>, the court concluded the new evidence in question was not material because it indicated "at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing."  <u>Id.</u> at 512 (citing <u>Ward v. Schweiker</u>, 686 F.2d 762, 765-66 (9th Cir. 1982)).

Plaintiff claims that Dr. Dinut's report and opinion constitutes material evidence relevant to Plaintiff's disability determination even though it was not submitted to the ALJ for consideration.  ECF No. 10, pg. 21.  Plaintiff argues this new evidence shows a reasonable probability of changing the outcome of the ALJ's decision because the ALJ relied on the lack of supporting clinical evidence in making the decision to deny benefits.  <u>See id.</u>  Plaintiff asserts that Dr. Dinut's report identified a "'broad range of clinical features reflecting severe depression, anxiety, and psychosomatic complaints, and severe impairment in functioning'" and that Plaintiff "continued to exhibit poor adaptability to stressful situations."  <u>Id.</u>  Based on Plaintiff's neuropsychological profile, Dr. Dinut opined that "it was very unlikely that [Plaintiff] would be able to engage in competitive employment."  <u>Id.</u>  Thus, Dr. Dinut's findings and opinion support the "need for greater mental work restrictions, including accommodation of Plaintiff's difficulty coping and dealing with stressful situations."  <u>Id.</u>

Plaintiff cites SSR 85-15 to support her request for remand as "limitations related to a claimant's difficulties in responding to the pressures of work 'must be reflected the RFC assessment'" and argues that the ALJ must consider Dr. Dinut's evaluation of these limitations and reevaluate her residual functional capacity.  <u>Id.</u> Finally, while Plaintiff concedes that "the ALJ may ultimately choose to reject" Dr. Dinut's opinion, Plaintiff  speculates that "it is also quite possible that the ALJ may be persuaded by the information" and grant Plaintiff benefits.  <u>Id.</u>

Defendant argues first that this new evidence is untimely because as early as January 7, 2021, Plaintiff was put on notice from a discussion with Dr. Ruecker that a neuropsychological test may benefit Plaintiff in order to "see what the trajectory of her cognition is"; still, at the February 2021 hearing, Plaintiff's counsel affirmed to the ALJ that the record was incomplete and missing records from Plaintiff's pain management doctor—not Dr. Dinut. ECF No. 11, pg. 13. As a result, the ALJ held open the record for three weeks to accommodate the

1  receipt of these records.  See id.  It was only after the ALJ rendered the decision denying Plaintiff

2  benefits on April 22, 2021, that Plaintiff requested the Appeals Council review the ALJ decision

3  in light of Dr. Dinut's March 30, 2021 report.  See id.  The Appeals Council denied Plaintiff's

4  request and noted that Dr. Dinut's report and opinion did not show a reasonable probability that it

5  would change the outcome of the ALJ's decision.  Id.

6          Next, Defendant argues that the RFC finding already limits the complexity of work

7  that Plaintiff can perform in that it "accounts for difficulty with adaptation, concentration,

8  memory, and stress."  See id., pg. 14.  According to Defendant, the ALJ "acknowledged

9  Plaintiff's complaints that she had difficulty with her memory and stress," which resulted in a

10  finding at Step 2 that Plaintiff had "moderate mental impairment in concentrating, persisting, or

11  maintaining pace, and in understanding, remembering, or applying information."  Id.

12  Consequently, the RFC limited Plaintiff to performing "no greater than simple job instructions

13  and simple and repetitive job tasks."  Id.  Defendant claims that Plaintiff fails to show how the

14  RFC finding was inconsistent with Dr. Dinut's report.  Id.

15          Defendant then argues that Dr. Dinut's statement that "it is very unlikely that

16  [Plaintiff] is able to participate in competitive employment" is an "assessment of disability that

17  the Commissioner's regulations exclude from the definition of a medical opinion."  Id. (citing 20

18  C.F.R. § 404.1513(a)(2) for the point that a medical opinion is a statement about what a claimant

19  can still do).  Finally, Defendant argues the Appeals Council already found that the new evidence

20  did not show a reasonable probability that it would change the outcome of the ALJ's decision.

21  See id., pg. 15. Because the Appeals Council "may deny or dismiss a request for review, or grant

22  the request and either issue a decision or remand the case to an ALJ," remand is unnecessary.  Id.

23          The Court finds that Plaintiff has not shown good cause for her failure to seek Dr.

24  Dinut's evaluation and report earlier in the proceedings and timely provide it to the ALJ for

25  consideration; thus, an order remanding the matter so the ALJ can consider Dr. Dinut's report and

26  opinion is inappropriate, here.  The March 30, 2021 report was based on evaluations Dr. Dinut

27  performed on March 3, 2021 and March 30, 2021, but the administrative hearing was held on

28  February 11, 2021, where Plaintiff was represented by counsel. CAR 32, 15.  Although the

1   reports were not prepared until after the hearing, at the time of the hearing and presumably long

2   beforehand, Plaintiff's attorney was aware of Plaintiff's claims of neurological impairment.  In

3   fact, Plaintiff applied for disability benefits on December 18, 2019 and, on January 7, 2021,

4   Plaintiff discussed with her physician, Dr. Ruecker, the benefit of a neuropsychological test;

5   however, at the February 11, 2021 hearing, Plaintiff's counsel failed to mention any report from

6   Dr. Dinut was forthcoming or that the record was incomplete on that basis.

7          Additionally, Plaintiff offers no explanation why she failed to receive an

8   evaluation from Dr. Dinut prior to the February 11, 2021 hearing.  Indeed, Plaintiff fails to

9   mention any reason at all for the evaluation delay or failure to notify the ALJ that the report was

10  forthcoming.[6]  See Sanchez, 812 F.2d at 512 (denying good cause existed when plaintiff failed to

11  seek psychiatric evaluation earlier in the proceedings).  Hence, Plaintiff has not shown good

12  cause for her failure to provide the ALJ Dr. Dinut's evaluations for consideration earlier.

13         Because Plaintiff has failed to show good cause, the Court need not address

14  whether the evidence is material.  Therefore, the Court denies Plaintiff's request to remand the

15  matter for reconsideration of the ALJ's decision, based on the medical report of Dr. Dinut.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26

27         [6] One explanation could be that when Plaintiff predicted failure at the hearing, she sought
28  a new expert witness who might better support her disability claims. See e.g., Allen v. Sec'y of
    Health & Hum. Servs., 726 F.2d 1470, 1473 (9th Cir. 1984).

/ / /

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, ECF No. 10, is granted;

2.    Defendant's motion for summary judgment, ECF No. 11, is denied;

3.    The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  June 5, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

18